This document was signed electronically on September 17, 2014, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated:  September 17, 2014



**ALAN M. KOSCHIK**
**U.S. Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re | ) |
| | ) Case No. 14-50999 |
| RAYMOND L. KEMMERY, | ) |
| | ) Chapter 13 |
| Debtor. | ) |
| | ) Judge Alan M. Koschik |
| | ) |

**MEMORANDUM OPINION REGARDING CREDITOR AUTO LOAN, INC.'S OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN AND DEBTOR'S OBJECTION TO AUTO LOAN, INC.'S CLAIM**

### I.      JURISDICTION

The Court has jurisdiction in this case, and over the two contested matters at issue concerning Creditor Auto Loan, Inc.'s (the "Creditor") Objection [docket #15] to Debtor Raymond L. Kemmery's (the "Debtor") Chapter 13 Plan [docket #5], and the Debtor's Objection to the Creditor's Claim [docket #26], pursuant to 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (L).

## II.     PROCEDURAL HISTORY

On April 19, 2014, the Debtor, Raymond Kemmery, filed a petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301, *et seq*.  Approximately ninety days prior to filing bankruptcy, the Debtor entered into a retail installment agreement with Ravenna Auto Sales, Inc. to purchase a 2006 Chevrolet Colorado (the "Vehicle").  The Vehicle was financed by the Creditor.

Simultaneously with his petition, the Debtor filed his Chapter 13 Plan [docket #5] (the "Plan").  The Plan proposed to pay Creditor the full amount of its claim at an interest rate of 5.25 percent.  On April 29, 2014, Creditor filed its proof of claim asserting a secured claim of $17,398 in the Debtor's vehicle with an interest rate of 18.95 percent (the "Claim"). [1]

In response to the Debtor's proposed treatment of the Creditor's claim under the Plan, on May 20, 2014, Creditor filed its Objection to Confirmation of Plan [docket #15] (the "Plan Objection").  In its Plan Objection, the Creditor asserts that its claim should bear interest at 18.95 percent (almost, but not quite, the contract rate).  This is so, the Creditor argues,[2] because the Claim can be classified as a so-called "910-day claim" pursuant to Section 1325(b)(5), a claim secured by a purchase money security interest in a motor vehicle and incurred within 910 days of the commencement of the bankruptcy case.  Creditor further argues that the Debtor knew or should have known that he intended to file for bankruptcy and/or was insolvent at the time he entered into the loan agreement with Creditor as the Debtor filed bankruptcy a few weeks after

---

[1] The contract rate of interest in the Creditor's retail installment agreement with the Debtor appears to be 19.18 percent, but the interest rate asserted in the Creditor's proof of claim is 18.95 percent.

[2] The Creditor does not mention its claim's status as a 910-day claim expressly.  Instead, it objects to the claim's treatment because the vehicle was purchased less than 90 days before the bankruptcy filing.  The Court interprets this as raising an objection based on Creditor's right as a holder of a 910-day claim.  The Creditor's arguments relating to nondischargeability under Section 523 and insolvency under Section 547 are addressed in footnote 6, *infra*.

signing the loan agreement. The Creditor has not, however, filed a nondischargeability action against the Debtor under Section 523 and the deadline to do so has expired.

On June 13, 2014, the Debtor filed his response to the Plan Objection [docket #25] (the "Response"). In his Response, the Debtor asserts that the correct formula for determining an appropriate interest rate on a secured claim under 11 U.S.C. §1325(a)(5)(B)(ii) was established by the United States Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004). Section 1325(a)(5)(B)(ii) requires that with respect to a secured claim, a chapter 13 plan must provide to an objecting creditor, whose collateral is not being sold, a series of equal periodic payments with a "value, as of the effective date of the plan . . . not less than the amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). The Supreme Court in *Till* interpreted this provision as imposing an interest rate on the secured creditor's claim based on a "prime-plus" formula, which is based on the then-current prime interest rate plus an adjusted rate for the risk of non-payment. The Debtor points out that this approach was more recently applied by the Bankruptcy Appellate Panel for the Sixth Circuit in *In re Taranto*, 365 B.R. 85, 90 (B.A.P. 6th Cir.2007).

Debtor also filed an objection to the Creditor's proof of claim on June 16, 2014 [docket #26] ("Objection to Claim") asserting the same arguments contained in his Response.[3]

A hearing on the Plan Objection and Response was held on June 19, 2014 (the "Hearing"). Counsel for both the Debtor and Creditor appeared. During the Hearing, both counsel for the Debtor and Creditor argued on behalf of their respective clients, asserting the

---

[3] Although the Objection to Claim was filed prior to the June 19, 2014 hearing on the Plan Objection, it was not yet ripe for this Court's consideration at that hearing due to the fact that the time period for responses had not yet expired. In fact, the Creditor did not file an opposition to the Objection to Claim. However, because these separate objections relate to a common set of facts and legal issues and were raised contemporaneously, the Court will consider the Creditor's Plan Objection as its response to the Objection to its Claim and will rule on both matters in this Memorandum Opinion.

3

same allegations in further support of their pleadings, which was sufficiently outlined above and does not require further discussion.

### III.    DISCUSSION

The issue before the Court is narrow in scope.  It requires the Court to determine whether the interest rate methodology established by the Supreme Court in *Till* is applicable to a claim secured by a motor vehicle purchased within 910 days of the petition date, which is given special treatment under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 ("BAPCPA"), statutory amendments to the Bankruptcy Code that had not yet been enacted at the time of the ruling in *Till*.  This issue was presented to the court in *Taranto*, albeit on less conventional facts than those presented in this case.

In *Taranto*, the debtors entered into a retail installment contract and security agreement for the purchase of a 2004 Chrysler Town & Country with creditor, DaimlerChrysler Services North America LLC within 910 days of their bankruptcy filing.  On November 16, 2005, one month after BAPCPA's effective date, the debtors filed their bankruptcy petition and their Chapter 13 plan, which was later amended.  Their amended plan proposed to pay the creditor's secured claim in monthly installments during the life of their amended plan at the contract rate of interest of zero percent.  Although the plan retained the contract's rate of interest bargained for by the parties, the debtor's proposed treatment of the creditor's claim sought to accelerate the payment schedule, thereby paying off the secured claim in full approximately three years ahead of the contract's maturity date.

The creditor filed an objection to the confirmation of debtors' amended plan stating that the appropriate rate of interest applied to its secured claim would be the "prime-plus" interest

4

rate as stated in *Till*.[4] In their response to the creditor's objection, the debtors, instead of directly

contesting the applicability of *Till*, argued that because the amended plan proposed to accelerate

payments, which would place the creditor in a better position than it would have been under the

original contract, the creditor was not entitled to any interest in addition to the contractually

agreed rate of zero percent. The bankruptcy court overruled the creditor's objection concluding

that the application of *Till* on these peculiar facts would result in an unjustified windfall to the

creditor and would unfairly diminish the distribution to the debtors' unsecured creditors. The

creditor filed a timely appeal.

On appeal, the Bankruptcy Appellate Panel of the Sixth Circuit confronted the same issue

presented to this Court: what is the applicable interest rate for a 910-day secured claim that is

paid in monthly installments during the life a Chapter 13 Plan? In consideration of this issue,

*Taranto* looked to Section 1325(a)(5)(B)(ii) for guidance.

Whether implicitly or explicitly, the suggestion was made in *Taranto*, and has been made

in this case, that the adoption of BAPCPA exempts holders of 910-day claims from interest rate

adjustment under *Till*. While BAPCPA is certainly relevant to 910-day claims, it does not affect

the application of *Till*. BAPCPA's impact lies with the size of secured claim, not the interest rate

that must be paid to establish the claims' present value.

In general, determination of the value of a secured claim is governed by Section 506(a),

which provides for the bifurcation of undersecured claims. Under Section 506(a), claims are

classified as secured claims to the extent of the value of the property of the estate that serves as

collateral for the claim and are classified as an unsecured claims to the extent that the claim

---

[4] The oddity of *Taranto* was that the contract rate was below the prime rate. In fact, it was zero. This peculiarity resulted in the parties taking unconventional positions regarding the application of *Till*. Nevertheless, the holding in *Taranto* is instructive in more conventional cases such as the present one.

exceeds the value of the collateral. *See* 11 U.S.C. § 506(a). The process provided by Section 506(a), whereby secured claims are reduced to an amount equal to the value of collateral, is commonly referred to as a "strip down."

Upon the enactment of BAPCPA, however, Section 506(a) is no longer applied to allowed claims secured by motor vehicles purchased by a debtor within the 910 days preceding the debtor's bankruptcy filing. In what is often referred to as the "hanging" paragraph, which is the unnumbered paragraph at the end of Section 1325(a), these "910-day claims" are treated differently than other allowed undersecured claims. It provides:

> For purposes of [Section 1325(a)(5)], [S]ection 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is subject of the claim, the debt was incurred within the 910 day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor[.]

Thus, 910-day claims cannot be stripped down and must be treated as fully secured. *Taranto*, 365 B.R. 85, 89; *In re Sparks*, 346 B.R. 767, 771 (Bankr. S.D. Ohio 2006).

Notwithstanding the hanging paragraph's prohibition against stripping down liens on motor vehicles encumbered by 910-day claims, debtors may nevertheless propose a plan in which the payment of a creditor's allowed 910-day claim is altered in other ways, just as with other secured claims.

Section 1325 outlines the requirements for confirmation of a plan filed under Chapter 13 of the Bankruptcy Code. Relevant to this decision, Section 1325(a)(5) "mandates the treatment of 'allowed secured claims.'" *In re Taranto*, at 88. The statute provides in pertinent part that:

> Except as provided in subsection (b), the court shall confirm a plan if . . . (5) with respect to each allowed secured claim provided for by the plan . . . (B) . . . (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim[.]

6

11 U.S.C. § 1325(a)(5)(B)(ii).  Whenever a secured claim is modified over a creditor's objection, the plan constitutes a "cram down" of the creditor's claim.  *See, Taranto,* 365 B.R. at 90.  In *Taranto*, although the debtors plan proposed to accelerate their payment of the creditor's claim and pay the contract-rate of interest of zero percent, the court determined that their proposal constituted a "cram-down" of the creditor's allowed secured claim.  Specifically, *Taranto* held that "[a]ny plan that seeks to modify a secured creditor's rights over its objection is a cram down."  *Id.*; *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 957, 117 S.Ct. 1879 (1997).

Under a cram down plan, a creditor, pursuant to Section 1325(a)(5), is entitled to the present value of its claim when the claim is paid in installments over the life of a Chapter 13 plan.  *See Till v. SCS Credit Corp.,* 541 U.S. 465 (2004).  Because payment of a claim over time is not as valuable to a creditor as an immediate payment of a claim and such payment carries an inherent risk of default by the debtor, in addition to the risk of diminution of value of the claim, interest must be paid to achieve present value of the claim.  11 U.S.C. § 1325(a)(5)(B)(ii); *Taranto*, 365 B.R. at 90.

The crux of the issue in most cases, and certainly this case, is the interest rate that is applied.  The calculation of present value interest pursuant to Section 1325(a)(5)(B)(ii) was conclusively addressed by the United States Supreme Court in *Till*.  The Supreme Court determined that the statutory language of Section 1325(a)(5) mandated that a secured creditor's claim be paid either (1) in full at the time of confirmation or (2) over time with interest.  Id. at 473-474, 124 S.Ct. 1951.  After considering other formulas presented to the Court, the Supreme Court decided that the "prime-plus" analysis was the correct formula to fully effectuate the purposes of the Bankruptcy Code.  The Supreme Court concluded that:

> [U]nlike the coerced loan, presumptive contract rate, and cost of funds approaches, the formula approach entails a straightforward, familiar, and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings. Moreover, the resulting "prime-plus" rate of interest depends only on the state of financial markets, the circumstances of the bankruptcy estate, and the characteristics of the loan, not on the creditor's circumstances or its prior interactions with the debtor.

*Till*, 541 U.S. at 479, 124 S.Ct. at 1962.

Although the Supreme Court interpreted Section 1325(a)(5)(B)(ii) in the context of a secured claim whose contract rate was much higher than the judicially-imposed "prime-plus" rate, *Taranto* expanded this decision to include all cases in which a debtor's plan modifies the right of secured creditor's claim without the consent of that creditor. In *Taranto*, the payment stream was being modified in the creditor's favor by accelerating payment. Regardless, that modification was held to be sufficient to trigger the present value requirement of Section 1325(a)(5)(B)(ii). *Taranto*, 365 B.R. at 91; *In re Soards*, 344 B.R. 829, 832 (Bankr. W.D. Ky. 2006). *Taranto* determined that under such circumstances in which the debtors' plan proposes to pay the creditor's secured claim by making periodic installment payments, the *Till* analysis governed and mandated that the creditor receive present value of its secured claim. 365 B.R. at 91.

This Court finds both the *Till* and *Taranto* decisions to be controlling with respect to the specific issue for decision in this present case. Here, the Creditor objected to the Debtor's proposed treatment of its 910-day claim in the Debtor's Plan. The Plan proposed to pay Creditor's entire claim as a secured claim at 5.25 percent, based on the current prime rate of 3.25 percent plus a 2 percent risk adjustment. Creditor contends, in response, that the applicable interest rate, as asserted on Creditor's proof of claim, should be 18.95 percent.

8

In his response to the Plan Objection, as well as the Objection to Claim, the Debtor counters that Creditor is not entitled to the interest rate of 18.95 percent, which he describes as "excessive." Instead, the Debtor proposes to pay present value of the Creditor's claim as presented under *Till*, calculated pursuant to the "prime-plus" analysis, and proposed to be 5.25 percent.

As in *Taranto*, the Debtor, despite proposing to pay the claim in full, seeks to modify Creditor's claim, over the objection of the Creditor, by paying the loan on his Vehicle off prior to the maturation date, through installment payments, over the life of his Chapter 13 plan.[5] As such, Creditor is entitled to present value of its claim, which requires the Debtor to pay interest on the claim. That rate is, however, the prime plus rate imposed by Section 1325(a)(5)(B)(ii) and *Till* and *Taranto*, not the Creditor's contract rate or any other similar rate. While the Debtor proposes a formula well-known to this Court – prime rate plus 2 percent – the Creditor offers no specific argument why a different market base rate or a different risk adjustment should be employed. Nor has the Creditor suggested that there are facts specific to this case that would justify a different risk adjustment. Indeed, the Creditor has not requested an evidentiary hearing to establish such case-specific facts. Instead, the Creditor, seemingly arbitrarily and without explanation, proposes the rate of 18.95 percent, which is grossly in excess of the prime rate. Indeed, it is not even the contract rate of 19.18 percent, which does not control the result in any event under the Code or the Supreme Court's holding in *Till*.

---

[5] Pursuant to the retail installment agreement, the original loan was signed on January 27, 2014 and was scheduled to run 104 months ending around the end of July, 2022, well after the Plan would run.

Following both *Taranto* and *Till*, this Court concludes that the "prime-plus" formula is the appropriate analysis to determine the present value of Creditor's claim in this case.[6] Under both *Taranto* and *Till*, the Debtor is permitted to adjust the interest rate, whether it be greater (as in *Taranto*) or less than, the contract rate of interest.

## IV.    <u>CONCLUSION</u>

The Creditor's Objection to Confirmation of Plan [docket #15] is overruled and the Debtor's Objection to Claim [docket #26] is sustained. The Trustee shall pay the Creditor's claim under the Debtor's Chapter 13 Plan at the rate of 5.25 percent based on *Till's* "prime-plus" standard. The Creditor's claim shall be disallowed to the extent it seeks interest at 18.95 percent and shall, instead, be allowed as a secured claim in the amount of $17,398, plus interest at 5.25 percent per *annum*.

The Court will enter separate orders with respect to the Plan Objection and the Objection to Claim that are consistent with this Memorandum Opinion.

# # #

---

[6] Although the Creditor suggests that the Debtor acted fraudulently when it entered into a retail instalment agreement with Creditor, the Court will not address that issue. In particular, Creditor asserts that the interest rate under *Till* should not be used because (allegedly) its claim could be excepted from discharge pursuant to Section 523(a)(2) on the grounds that the Debtor obtained a loan while harboring, and not disclosing, an intent to file a bankruptcy petition in the near future. The Creditor, however, did not file a nondischargeability action under Section 523(a)(2) as an adversary proceeding under Fed. R. Bankr. P. 7001(a) within the time frame established by Fed. R. Bankr. P. 4007(c) as required by Section 523(c). Moreover, the Creditor did not even attempt to assert nondischargeability in its Objection, instead merely suggesting passively that the claim might be nondischargeable. There is no basis to ignore the rule of *Till* in setting an interest rate on a secured claim in a Chapter 13 plan based on suggestions of nondischargeability that are not actually pursued.

In addition, the Creditor's reference to presumed insolvency under Section 547, the preference avoidance statute, is similarly irrelevant to the Plan Objection and the Objection to Claim.